UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRY GERTZ,

Plaintiff,

v.

NORTHROP GRUMMAN SYSTEMS CORPORATION, et al.,

Defendants.

Case No. 26-cv-03396-EKL

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 16

Before the Court is Defendants' motion to compel arbitration. ECF No. 16. The Court carefully reviewed the parties' briefs and heard argument on August 5, 2026. For the following reasons, the motion is GRANTED.

## I. BACKGROUND

Plaintiff filed this putative class action in Santa Clara County Superior Court on March 13, 2026, asserting a variety of California wage-and-hour violations against his former employers, Northrop Grumman Systems Corp. and Northrop Grumman Innovation Systems LLC (together, "Northrop Grumman"). Notice of Removal Ex. C at 1, ECF No. 1-1 ("Compl."). Plaintiff alleges that he worked for Northrop Grumman "as an hourly, non-exempt employee from approximately February 2018 through October 30, 2025." Compl. ¶ 18. According to the complaint, "Plaintiff's and the putative class members' job duties included, but were not limited to, responding to and completing maintenance requests throughout [Defendants'] facility, assembling equipment, installing fixtures, performing repairs, and assisting other departments with operational needs." *Id.* ¶ 24.

In connection with the motion to compel arbitration, the parties submitted materials that provide further details regarding the nature of Plaintiff's work. Plaintiff submitted a declaration

United States District Court
Northern District of California

stating that he was employed by Northrop Grumman as "a Maintenance Technician" and his job duties "included performing maintenance," which is consistent with his allegations in the complaint. Gertz Decl. ¶¶ 2, 8, ECF No. 21-2. Northrop Grumman submitted an employment offer letter which, consistent with Plaintiff's declaration, identifies Plaintiff's position title as "Maintenance Technician 2," and states that Plaintiff worked in Northrop Grumman's "Facilities" department. Franklin Decl. Ex. 1, ECF No. 18-1 ("Offer Letter"). Northrop Grumman also submitted a declaration from Plaintiff's former manager, Joseph Alvarado, who manages a team of maintenance technicians. Alvarado Decl., ECF No. 20. Mr. Alvarado attests that:

> The job duties of a maintenance technician like Plaintiff consist of performing maintenance and repair tasks inside and outside of the Oxnard facility building. Plaintiff was responsible for general maintenance and repair tasks such as repairing air conditioning units, repairing sky lights on the roof, assembling desks together, moving chairs from one location to another, throwing trash, plumbing work, general carpentry, general electrical, and any other general maintenance and repair tasks at the facility on a day-to-day basis.

*Id.* ¶ 3. Mr. Alvarado further attests that "Plaintiff did not operate any vehicles as part of his job duties, other than occasional maintenance-related local errands within a short radius of the facility, such as dropping off the Company box truck or van at the dealership for repairs, or picking up items from a nearby store for maintenance tasks." *Id.* ¶ 4.

Northrop Grumman also submitted declarations from two of Plaintiff's former coworkers who work as maintenance technicians and fall within the class of workers that Plaintiff seeks to represent in this action. Banales Decl. ¶ 2, ECF No. 24-1; Diaz Decl. ¶ 2, ECF No. 24-2. The former coworkers attest that they are responsible for responding to "maintenance work orders in the facility, like fixing the plumbing, maintaining HVAC systems, fixing electrical issues, carpentry, repairing roofs and skylights, assembling and moving furniture and equipment, performing general building repairs, and other maintenance work needed to keep the facility operational." Banales Decl. ¶ 3; *see also* Diaz Decl. ¶ 3 (similar). The former coworkers further attest that maintenance technicians are "not part of the shipping, receiving, warehouse, or logistics departments" at Northrop Grumman's facility. Banales Decl. ¶ 4; *see also* Diaz Decl. ¶ 4.

Plaintiff claims that, although he worked as a maintenance technician, his job duties also included using a "forklift to unload trucks and load trucks," and some trucks had out-of-state license plates. Gertz Decl. ¶¶ 4, 8. Some of the goods that Plaintiff removed from delivery trucks had "shipping receipts" reflecting that they arrived from out-of-state locations. *Id.* ¶¶ 5-6. Plaintiff further attests that he "placed items [on trucks] to leave the warehouse for their final destination," which included out-of-state locations. *Id.* ¶ 7.

Northrop Grumman moves to compel arbitration, invoking an arbitration agreement that Plaintiff signed during his employment onboarding process. *See* Franklin Decl. ¶¶ 5-12, 14, ECF No. 18; *see also* Franklin Decl. Ex. 2 at 2, 5, ECF No. 18-2. The agreement covers any claim that "in any way arises out of, relates to, or is associated with [Plaintiff's] employment with [Northrop Grumman], the termination of [Plaintiff's] employment, or any communications with third parties regarding or related to [Plaintiff's] employment." Franklin Decl. Ex. 5 at 2, ECF No. 18-5.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of written arbitration agreements implicating interstate commerce. 9 U.S.C. § 1 *et seq.*; *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA extends to employment contracts, except for "contracts of employment of transportation workers"). In deciding whether to compel arbitration, a court must determine: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

State contract law governs the contract formation question.[1] *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The burden is on the party seeking arbitration to demonstrate that there was mutual assent to the agreement to arbitrate. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023); *see also Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 842 (2014) (holding that the party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence"). "The trial court

[1] The parties agree that California law applies.

sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." *Ruiz*, 232 Cal. App. 4th at 842.

## III. DISCUSSION

Based on the record before the Court, Defendants have established that Plaintiff agreed to arbitrate the claims he asserts in this action on an individual basis. *See* Mot. at 5-10. Plaintiff did not meaningfully contest that he signed the arbitration agreement or that the arbitration agreement covers the claims at issue.[2] Instead, Plaintiff contends that the arbitration agreement is exempt from the FAA because Plaintiff belongs to a class of workers engaged in foreign or interstate commerce. *See* 9 U.S.C. § 1 (exempting from the FAA's scope "any contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). The Court must decide whether the transportation worker exemption applies before compelling arbitration. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111-12 (2019) (holding that the applicability of the FAA Section 1 exemption may not be delegated to an arbitrator).

"As the party opposing arbitration, plaintiffs bear the burden of establishing that the exemption applies." *Fli-lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). The Court applies the evidentiary standards and burdens that apply to summary judgment motions. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *see also Noel v. Roblox Corp.*, No. 24-cv-00963-JSC, 2024 WL 3747454, at *5 (N.D. Cal. Aug. 8, 2024). Therefore, because Plaintiff bears the ultimate burden of proof as to the transportation worker exemption, at this stage, Plaintiff must present at least a genuine dispute of material fact that the exemption applies. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If Plaintiff fails to do so, the Court must compel arbitration.

---

[2] In his declaration, Plaintiff states that he does "not recall signing an agreement to arbitrate," Gertz Decl. ¶ 3, but Plaintiff does not address this issue in his opposition brief. In any event, "Plaintiff's bare denials are insufficient to overcome [Defendants'] overwhelming evidence" that Plaintiff reviewed and signed the arbitration agreement. *Montes v. Thorntons LLC*, No. 25-cv-05895-EKL, 2026 WL 881712, at *5 (N.D. Cal. Mar. 26, 2026).

The Court employs a two-step analysis to determine whether the transportation worker exemption applies. At step one, the Court "defin[es] the relevant 'class of workers' to which" Plaintiff belongs. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). In defining the class of workers, the Court focuses on "the actual work that the members of the class, as a whole, typically carry out," not on what the employer "does generally." *Id.* at 456. At step two, the Court "determine[s] whether that class of workers is 'engaged in foreign or interstate commerce.'" *Id.* A class of workers is engaged in foreign or interstate commerce if the workers play a "direct and necessary role in the free flow of goods across borders." *Id.* at 458 (citation modified). In other words, the workers must be "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.*; *see also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1159-60 (9th Cir. 2024) ("[A]n employee's relationship to the movement of goods must be sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce."). Courts must give the transportation worker exemption a "narrow construction." *Circuit City Stores*, 532 U.S. at 118.

**A. Step One: Defining the Class of Workers**

At step one, the Court concludes that Plaintiff belongs to a class of maintenance technicians, consistent with Plaintiff's allegations and all evidence submitted in connection with the motion to compel arbitration. The Court finds that this class of workers is responsible for "completing maintenance requests," "performing repairs," and accomplishing other similar work tasks. Compl. ¶ 24; *see also* Alvarado Decl. ¶ 3 ("The job duties of a maintenance technician like Plaintiff consist of performing maintenance and repair tasks[.]").

Plaintiff attests that he personally used a forklift to load and unload trucks, but this statement does not establish that such work is performed by the class as a whole. *See Saxon*, 596 U.S. at 457 (The FAA transportation worker inquiry "emphasizes the actual work that the members of the class, *as a whole*, typically carry out." (emphasis added)); *see also Ortiz*, 95 F.4th at 1164 ("The crux of the court's analysis remains the work accomplished."). By contrast, Northrop Grumman submitted unrebutted evidence from Plaintiff's former manager and two of his former coworkers who all attest that the work of a maintenance technician is limited to

maintenance work and does not include loading or unloading trucks, or any similar work. *See* Alvardo Decl. ¶ 4; Banales Decl. ¶¶ 2-4; Diaz Decl. ¶¶ 2-4. This evidence is consistent with Plaintiff's own allegations regarding the nature of the work performed by the class as a whole.[3] *See* Compl. ¶ 24. Therefore, the Court concludes that the relevant class of workers is not responsible for loading or unloading delivery trucks.

### B. Step Two: Determining Whether the Class of Workers Is Engaged in Interstate Commerce

At step two, the Court analyzes whether the class of workers plays a "direct and necessary role in the free flow of goods across borders." *Saxon*, 596 U.S. at 458 (citation modified); *see also Flowers Foods, Inc. v. Brock*, 146 S. Ct. 1358, 1365 (2026). To satisfy this requirement, workers do not need to physically transport goods across borders, *Saxon*, 596 U.S. at 461, and there is no evidence that Plaintiff did so. However, the class of workers must at least play "a tangible and meaningful role" in the progress of goods "through the channels of interstate commerce." *Ortiz*, 95 F.4th at 1159-60. The transportation worker exemption becomes more attenuated as workers carry out duties "further removed from the channels of interstate commerce or the actual crossing of borders." *Saxon*, 596 U.S. at 457 n.2.

Here, the Court finds that the class of workers does not play any role, much less a "direct and necessary" or "tangible and meaningful" one, in the progress of goods in interstate commerce. *Saxon*, 596 U.S. at 458; *Ortiz*, 95 F.4th at 1159-60. The class of maintenance technicians performs maintenance work that is not related to any transportation of goods that might be performed by other departments within Northrop Grumman. *See supra* § III.A.

Attempting to satisfy the transportation worker exemption, Plaintiff primarily relies on *Ortiz*, which involved a class of warehouse workers. In that case, the plaintiff "worked at a

---

[3] At the motion hearing, Plaintiff raised new objections to Northrop Grumman's declarations, arguing that they are self-serving and not based on personal knowledge. These objections should have been filed no later than seven days after Northrop Grumman filed its reply brief. *See* Civil L.R. 7-3(d)(1). In any event, the objections are overruled. "[I]t is immaterial that a declaration is 'self-serving' absent some other deficiency that undermines its evidentiary value." *Thornhill v. McLane Foodservice, Inc.*, 816 F. Supp. 3d 1006, 1013 (N.D. Cal. 2026); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Here, the declarations establish that the witnesses have personal knowledge of the facts to which they attest.

California warehouse facility" that "receive[d] Adidas watches, apparel, and shoes from mostly international locations," and those products were then "shipped to end-use consumers and retailers in a variety of states." *Ortiz*, 95 F.4th at 1157. The plaintiff's job duties included "exclusively warehouse work: transporting packages to and from storage racks, helping other employees in obtaining packages so they could be shipped, and assisting . . . to prepare packages for their subsequent shipment." *Id.* at 1161. Critically, the warehouse workers handled goods "near the very heart of their supply chain," and those goods "were still moving in interstate commerce when the employee interacted with them, and each employee played a necessary part in facilitating their continued movement." *Id.* at 1157-58, 1161-62. Based on the record in *Ortiz*, the class of workers played an "undisputed role in directly facilitating" the interstate distribution of goods. *Id.* at 1163. Here, by contrast, the record reflects that maintenance technicians as a class do not work with goods in any relevant way.[4]

In sum, Plaintiff has not met his burden at step two to produce evidence regarding the class of workers' "relationship to the movement of goods" in interstate commerce. *Ortiz*, 95 F.4th at 1160. Plaintiff's class of workers performs purely intrastate maintenance work, and there is no evidence in the record regarding the relationship between this work and the potential movement of goods in interstate commerce. *See id.* Accordingly, the transportation worker exemption does not apply here. Because this is the only challenge Plaintiff raised to enforcement of the arbitration agreement under the FAA, the motion to compel arbitration is granted. The Court need not consider Northrop Grumman's alternative position that the arbitration agreement is enforceable under the California Arbitration Act. *See* Mot. at 1 n.1.

---

[4] The possibility that other workers at Northrop Grumman may ship goods in interstate commerce does not make Plaintiff a transportation worker within the meaning of the FAA. *See Ortiz*, 95 F.4th at 1164 (explaining that "janitors . . . [with] a coincidental relationship to interstate commerce have nowhere near the connection to the actual transportation of goods" that warehouse workers had). Therefore, this case is not like others in which the relevant class of workers as a whole played a direct and necessary role in transporting goods. *Cf. Nair v. Medline Indus., LP*, No. 23-15582, 2024 WL 4144070, at *1-2 (9th Cir. Sep. 11, 2024) (Plaintiff's evidence established that she worked in a shipping dock every day and spent 100% of her time preparing goods for shipment and loading delivery trucks; the defendant did not contest this job description "or offer evidence to rebut it.").

United States District Court
Northern District of California

### C. The Case Is Stayed Pending the Arbitration Proceedings

"Under 9 U.S.C. § 3, a district court must stay proceedings for claims and issues 'referable to arbitration' pending resolution of the arbitration." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). Here, all claims are referable to arbitration. Thus, the case must be stayed in its entirety until the arbitration proceedings conclude.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration, and Plaintiff shall arbitrate his claims on an individual basis. This case is STAYED and administratively closed pending resolution of the arbitration proceedings. Either side may seek to re-open the case within 30 days of completion of arbitration, either to confirm or vacate any arbitration award. The parties shall file a joint status report regarding the arbitration proceedings by **February 5, 2027**. The parties shall file updated joint status reports every six months thereafter.

**IT IS SO ORDERED.**

Dated: August 5, 2026

Eumi K. Lee
United States District Judge